**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.19-cv-03608-CMA-NYW

JOEY RIVERA,

      Plaintiff,

v.

JEFF LONG,
WILLIAM SCOTT,
MICHELLE WINGERT, and
MICHAEL YOUNGER,

      Defendants.

---

## ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

      This matter comes before this court on Defendants Jeff Long, William Scott, Michelle Wingert, and Michael Younger's (collectively, "Defendants") Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Motion" or "Motion to Dismiss") [#50, filed August 26, 2020]; and Plaintiff Joey Rivera's ("Plaintiff" or "Mr. Rivera") Motion for Order Requesting Status Update [#73, filed January 25, 2021]. The undersigned considers the Motions pursuant to 28 U.S.C. § 636(b), the Order of Reference dated February 28, 2020 [#9], and the Memoranda dated August 27, 2020 and January 26, 2021, respectively [#52, #74].

      This court has reviewed the Motions, associated briefing [#67, #71, #72], case file, and applicable case law. For the reasons set forth herein, this court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED**, and **ORDERS** that Plaintiff's Motion for Order Requesting Status Update is **GRANTED**.

## FACTUAL BACKGROUND

The court draws the following facts from the Complaint and presumes they are true for purposes of the instant Motion.[1]

Mr. Rivera is an inmate currently incarcerated within the Colorado Department of Corrections ("CDOC") at Sterling Correctional Facility ("SCF") in Sterling, Colorado. *See* [#41 at 2]. An incident on an unspecified date sometime before the end of July 2018 occurred in an SCF unit other than Mr. Rivera's. [*Id.* at 4 ¶ 1, 10 ¶ 13]. Mr. Rivera was subsequently placed on a "red tag" sanction by order of Lieutenant Intelligence Officer Michael Younger ("Defendant Younger"), whereby his recreation and education program privileges were withheld, and he was limited to shower privileges once every three days. [*Id.* at 4 ¶¶ 1, 3–5, 11 ¶ 15]. Intelligence staff sought to interview Mr. Rivera about the incident, who refused to speak with staff. [*Id.* at 4 ¶¶ 1–5]. Mr. Rivera informed intelligence staff that his refusal to speak was rooted in self-incrimination concerns and feared that "appearing as an informant" through his participation in an interview with intelligence staff could place him in danger from the inmate population. [*Id.* at 4 ¶ 3, 11 ¶ 15]. After explaining that he was "exercising [his] privilege against incrimination," Mr. Rivera was then told by Captain William Scott ("Defendant Scott") that "an indefinite time attachment was now placed on [his] red tag status." [*Id.* at 4 ¶¶ 3–4]. Subsequently, Mr. Rivera filed grievances stating that the incident occurred outside of his unit and that he

---

[1] As Mr. Rivera proceeds pro se, this court affords his papers and filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the court cannot and does not act as his advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to Plaintiff as to a represented party, *see Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

learned sometime after the incident that "dangerous contraband was found along with a note." [*Id.* at 10 ¶ 13].  These are the only facts related to the incident alleged in the Second Amended Complaint. *See generally* [*id.*].

Mr. Rivera protested his red tag sanction via a 21-day hunger strike, allegedly losing twenty pounds in the process. [*Id.* at 8 ¶ 6].  During that time, Major Michelle Wingert ("Defendant Wingert") and Defendant Scott "exercis[ed] their supervisory abilities during walk thrus," by telling inmates that they would be removed from red tag if they agreed to speak to intelligence staff. [*Id.* at 14 ¶ 25]. On the twenty-first day of his hunger strike, Defendant Scott threatened to send in the "sword team" if Mr. Rivera continued to refuse to speak with intelligence staff about the incident. [*Id.* at 14 ¶ 24].  Mr. Rivera subsequently spoke with intelligence staff  "in groups of two" to protect him from "both risks by having witnesses present." [*Id.* at 14 ¶ 26].  Shortly thereafter, Mr. Rivera's red tag sanction was lifted. [*Id.*].

## PROCEDURAL BACKGROUND

Proceeding pro se, Mr. Rivera initiated this action on December 19, 2019, by filing a Prisoner Complaint against Defendants John Doe, Jeff Long, William Scott, and Michelle Wingert for violation of his Fifth and Eighth Amendment rights.  *See generally* [#1].  On December 20, 2019, the Honorable Gordon P. Gallagher granted Mr. Rivera leave to proceed pursuant to 28 U.S.C. § 1915.  [#5].  During initial screening of the case pursuant to 28 U.S.C. § 1915, Magistrate Judge Gallagher ordered Mr. Rivera to file an Amended Complaint to address deficiencies in his pleading identified by the court.  *See* [#6].  Mr. Rivera filed an Amended Prisoner Complaint ("First Amended Complaint") on February 14, 2020, asserting three claims pursuant to 42 U.S.C. § 1983 against

Defendants Jeff Long, Michelle Wingert, William Scott, and "John Doe/Lt. of Intel Youngert"[2] for alleged violations of his First, Fifth, and Eighth Amendment Rights. *See generally* [#7].  On February 27, 2020, Magistrate Judge Gallagher determined that the case was not appropriate for summary dismissal and ordered the case reassigned.  [#8]. The case was reassigned to the Honorable Christine M. Arguello, the presiding judge in this matter, and drawn to the undersigned Magistrate Judge.  [*Id.*].

Defendants filed a Motion to Dismiss ("First Motion to Dismiss") on May 26, 2020, seeking to dismiss Mr. Rivera's First Amended Complaint in its entirety.  [#20].  That same day, Defendants also filed a Motion to Stay ("First Motion to Stay") requesting all discovery in this matter be stayed pending the resolution of their First Motion to Dismiss.  *See* [#21]. Plaintiff subsequently filed a Motion to Amend on June 26, 2020 [#37], and his proposed Second Amended Prisoner Complaint ("Second Amended Complaint") on July 16, 2020 [#41].  On July 22, 2020, this court recommended that Mr. Rivera's Motion to Amend be granted and Defendants' First Motion to Dismiss be denied without prejudice as moot, and denied as moot Defendants' First Motion to Stay.  [#42].  Judge Arguello adopted and affirmed the undersigned's Recommendation on August 12, 2020. [#46].  Plaintiff's Second Amended Complaint remains the operative pleading in this case.

The operative Second Amended Complaint asserts four claims made pursuant to 42 U.S.C. § 1983 for violations of Mr. Rivera's First, Fifth, Eighth, and Fourteenth Amendment rights.  *See* [#41].  Specifically, Mr. Rivera alleges that the Defendants

---

[2] *See*  [#7 at 10].  The fourth Defendant was identified by the CDOC Office of Legal Services as Michael Younger in its Waiver of Service.  [#13].  Accordingly, on June 17, 2020, the court ordered the Clerk of the Court to amend the caption to identify Michael Younger as the fourth Defendant in this action.  [#34].

violated his Fifth Amendment right to be free from self-incrimination (Claim I) [*id.* at 4, 8–10]; retaliated against Mr. Rivera in violation of his First Amendment rights (Claim II) [*id.* at 11]; violated his Eighth Amendment rights related to the conditions of his confinement at SCF (Claim III) [*id.* at 12–15]; and committed Fourteenth Amendment due process violations related to SCF's imposition of a "red tag" sanction against Mr. Rivera (Claim IV) [*id.* at 15–17]. Mr. Rivera sues all Defendants in both their individual and official capacities [*id.* at 2–3, 7], seeking injunctive relief for Claims I and IV [*id.* at 10 ¶ 14, 17 ¶ 33] and monetary damages for Claims II and III [*id.* at 11 ¶ 17, 15 ¶ 28].

On August 26, 2020, Defendants filed the instant Motion to Dismiss, asserting qualified immunity and seeking dismissal of Plaintiff's Second Amended Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [#50], and a Motion to Stay Discovery [#51], seeking a stay of discovery pending resolution of the Motion to Dismiss. By Minute Order dated September 2, 2020, the undersigned ordered Mr. Rivera to respond to the Motion to Stay and the Motion to Dismiss by September 23 and 30, 2020, respectively. [#54]. Defendants were ordered to file Replies to the Motion to Stay and Motion to Dismiss within 14 and 21 days of service of Plaintiff's Responses, respectively. [*Id.*].

On September 10, 2020, Plaintiff filed an "Unopposed Motion to Request Defendant [sic] Recent Dismissal Motion 7.1(c) [sic]" ("Motion for Order") seeking copies of the Defendants' Motion to Stay and Motion to Dismiss because he had not been provided copies by the Defendants and only learned of the pending Motions upon receipt of the undersigned's [#54] Minute Order setting the briefing schedule for the same. [#57]. Plaintiff also asked for an extension of time to respond to the Motions. [*Id.*]. This court

ordered Defendants to provide copies of the Motions to Plaintiff and to file a Status Report addressing Plaintiff's assertions that defense counsel had failed to do so. [#59, filed September 11, 2020].   Defendants subsequently filed a Status Report confirming that defense counsel failed to timely provide Plaintiff with copies of the Motions due to an inadvertent clerical error, and stating no opposition to Plaintiff's request for extension of time to file Responses thereto. [#60, September 15, 2020].   Accordingly, this court granted Plaintiff's request for extension and set October 9, 2020 as the deadline for filing of Plaintiff's Response to the Motions. [#61].

On September 23, 2020, Plaintiff filed his Response to the Motion to Stay. [#62]. In the week that followed, Plaintiff also sought and was granted a second extension to the deadline to respond to Defendants' Motion to Dismiss. [#63; #64; #65].   On October 26, 2020, this court granted Defendants' Motion to Stay.  [#69].   Plaintiff filed his Response [#67] and Defendants their Reply [#71] to the Motion to Dismiss on October 13 and November 3, 2020, respectively.  [#71].[3]  The Motion is thus ripe for recommendation and I consider the Parties' arguments below.

**LEGAL STANDARDS**

**I.      Fed. R. Civ. P. 12(b)(1)**

---

[3] Plaintiff later filed a "Response & Objection to Defendant Recent Reply 7.1(d)" ("Sur-Reply") [#72, filed November 30, 2020], challenging arguments and assertions made in Defendants' Reply.  The court has discretion to permit a nonmoving party to submit a sur-reply to respond to new material raised in a reply. *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005).  But Plaintiff did not file an accompanying motion for leave to file a sur-reply, and to the extent Mr. Rivera argues implicitly that Defendants' Reply introduced new material, this court respectfully disagrees.  As such, this court declines to consider Plaintiff's Sur-Reply in reaching the conclusions herein.

Federal courts are courts of limited jurisdiction.  Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies."  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014).  As such, courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction."  *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring).  Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party.  *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

A plaintiff must establish Article III standing to bring each of his claims separately.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007).  The standing inquiry has two components: constitutional and prudential.  To establish constitutional standing, a plaintiff must demonstrate "(1) an 'injury in fact,' (2) sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'"  *Susan B. Anthony List*, 134 S. Ct. at 2341 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

A plaintiff must also satisfy the requirements of prudential standing.  To establish prudential standing, a plaintiff must (1) assert his own rights, rather than those belonging to third parties; (2) demonstrate that his claim is not simply a "generalized grievance;" and (3) show that plaintiff's grievance falls within the zone of interests protected or regulated by statutes or constitutional guarantee invoked in the suit.  *See Bd. of Cty. Comm'rs v.*

*Geringer,* 297 F.3d 1108, 1112 (10th Cir. 2002) (citations omitted).  The elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case."  *Lujan*, 504 U.S. at 561.  Therefore, Article III standing cannot be assumed; the court must resolve issues of standing before it may reach the merits of an issue.  *See Colorado Outfitters Ass'n v. Hickenlooper ("Colorado Outfitters II")*, 823 F.3d 537, 543 (10th Cir. 2016).

When a party goes beyond the allegations set forth in the complaint to challenge the facts upon which subject matter depends, the presumption of truthfulness typically afforded the complaint's allegations does not apply and the court has wide discretion to consider, *inter alia*, affidavits and other documents to resolve the disputed jurisdictional facts. *United States v. Rodriquez Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)) (further citations omitted).  *See also Holt*, 46 F.3d at 1002–03 (when a factual challenge is made, there is no presumption of truthfulness attached to the plaintiff's allegations).

## II.    Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  *See also Hall v. Bellmon*, 935

F.2d 1106, 1110 (10th Cir. 1991) (holding that even *pro se* litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion).   Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).   *See also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible").

The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).   Should the court receive and consider materials outside the complaint, the court may convert a Rule 12(b)(6) motion to a motion for summary judgment if the parties have notice of the changed status and the nonmovant responded by supplying its own extrinsic evidence.   *See Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004).   However, a district court may consider legal arguments contained in a brief in opposition to dismissal or documents referred to in the complaint that are central to a plaintiff's claim, without converting the Rule 12(b)(6) motion into a summary judgment motion, if the Parties' do not dispute their authenticity.   *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).   In addition, the court may consider documents subject to judicial notice, including court documents and matters of public record.   *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

## ANALYSIS

Defendants assert qualified immunity from suit as to all four claims asserted against them in their individual capacities. *See generally* [#50]. Defendants also argue that Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim, and contend that this court lacks subject matter jurisdiction over Plaintiff's request for injunctive relief. [*Id.*].

## I.   Materials Considered

To start, Defendants are correct that Mr. Rivera's Response to their Motion to Dismiss contains new factual allegations. *See, e.g.*, [#67 at 3–4 ¶¶ 4–6]. And Mr. Rivera may not amend his pleading by adding new allegations in his Response to the Motion to Dismiss. *See Abdulina v. Eberl's Temporary Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. Feb. 3, 2015). Moreover, while Mr. Rivera enjoys a liberal construction of his filings, he is still bound by the same procedural rules that govern all civil actions filed in this District, namely, the Federal Rules of Civil Procedure and the Local Rules of Practice for the District of Colorado. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018). This includes Rule 15(a) of the Federal Rules of Civil Procedure that governs motions to amend pleadings and this District's Local Rule of Civil Practice 7.1(d) that prohibits including a motion within a response. Finally, this court notes that Mr. Rivera has already amended his operative pleading a number of times after receiving specific guidance from the court regarding the requirements for a cognizable claim. *See, e.g.*, [#1; #6; #7; #41]. For these reasons, this court's analysis focuses solely on the allegations contained in Plaintiff's Second Amended Complaint.

II.     **Official Capacity Claims**

A.      **Monetary Relief**

The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This immunity extends to suits by citizens against their own state or its agencies in federal court. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995). For claims brought pursuant to § 1983, a claim against a state official sued in her official capacity "is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Thus, the Eleventh Amendment bars suits against state officials sued in their official capacities for monetary damages pursuant to § 1983. *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) ("§ 1983 does not abrogate a state's sovereign immunity").

Plaintiff asserts all four § 1983 claims against Defendants in both their individual and official capacities. *See* [#41 at 2–3, 7]. With respect to Claim II (alleging First Amendment retaliation) and Claim III (alleging Eighth Amendment deliberate indifference), Plaintiff seeks compensatory and punitive damages against Defendants, presumably in both their individual and official capacities. [*Id.* at 6]. To the extent Mr. Rivera seeks monetary damages from Defendants in their official capacities, the Eleventh Amendment prohibits such claims. *See Ross v. Bd. of Regents of Univ. of N.M.*, 599 F.3d 1114, 1117 (10th Cir. 2010) (explaining that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

Notwithstanding Defendants' failure to assert Eleventh Amendment immunity in the instant Motion, Defendants do raise the issue of Eleventh Amendment immunity in their Reply, [#71 at 10 n.10], and Eleventh Amendment immunity "may be raised at any time, even on appeal for the first time." *United States v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008).[4]  Defendants argue that "to the extent Mr. Rivera is suing Defendants in their official capacities for monetary damages . . . the Court must dismiss those claims." [#71 at 10].

This court respectfully agrees. Plaintiff's official capacity claims for monetary damages are barred by the Eleventh Amendment. Accordingly, I respectfully **RECOMMEND** that Claims II and III, insofar as Mr. Rivera seeks monetary relief from Defendants in their official capacities, be **DISMISSED without prejudice**.

### B.    Injunctive Relief

The Eleventh Amendment, however, does not prohibit Mr. Rivera from seeking prospective injunctive relief from Defendants in their official capacities, *see Collins v. Daniels*, 916 F.3d 1302, 1315 (10th Cir. 2019) ("[A] plaintiff may avoid the Eleventh Amendment's prohibition on suits against states in federal court by seeking to enjoin a state official from enforcing an unconstitutional statute." (internal quotation marks omitted)), nor does it prohibit Mr. Rivera from seeking monetary relief from Defendants in

---

[4] In any event, "a court may raise the issue of Eleventh–Amendment immunity sua sponte but, unlike subject-matter jurisdiction, it is not obligated to do so," *see United States v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (citations omitted), and 28 U.S.C. § 1915A(b)(2) provides that a court may dismiss a claim brought by a prisoner proceeding in forma pauperis at any time if it determines the claim is frivolous, fails to state a claim, or seeks monetary damages against a defendant who is immune from such relief. *See Brenda Anderson Charity v. Cty. of El Paso*, No. 16-cv-00921-NYW, 2017 WL 1435852, at *7 n.7 (D. Colo. Apr. 21, 2017) (dismissing the plaintiff's official capacity claims for monetary damages against defendants pursuant to 28 U.S.C. § 1915A(b)(2)).

their individual capacities, *see Cornforth v. Univ. of Okla. Bd. of Regents*, 263 F.3d 1129, 1133 (10th Cir. 2001) (explaining that the Eleventh Amendment does not prohibit claims for monetary damages against individual-capacity defendants "because any award of damages will be satisfied from the individual's personal assets and will not be paid from the state treasury").

Defendants seek to dismiss Plaintiff's claims for injunctive relief concerning the prison's red tag policy, asserted in Claims I and IV, for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). [#50 at 19–20].  Specifically, Defendants argue that, because Mr. Rivera admits that his red tag sanction was lifted after 21 days upon speaking with intelligence staff and does not allege that he is currently under red tag sanction, his claim for injunctive relief regarding the red tag policy fails to present a live case or controversy and is therefore moot. [*Id.*]. Mr. Rivera neither disputes nor offers any evidence that contradicts the assertion that he was removed from red tag sanction prior to (and was not under red tag sanction at the time of) the filing of this action.  [#67]. Instead, Mr. Rivera counters only that the prison's "[]reckless disregard for prisoners['] future safety is exactly why injunction is not moot." [*Id.* at 15 ¶ 17].

Relevant to this court's determination of subject matter jurisdiction here are two related but distinct jurisdictional doctrines: mootness and standing. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) ("*Laidlaw*"); *RMA Ventures Cal. v. SunAmerica Life Ins. Co.*, 576 F.3d 1070, 1073 n.6 (10th Cir. 2009) ("Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence

(mootness)." (internal quotation marks omitted)).  Mootness is judged by the state of facts as they exist <u>after</u> the complaint is filed.  *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1185 (10th Cir. 2012).

By contrast, "'[a] plaintiff must demonstrate standing separately for each form of relief sought.'" *Smith v. U.S. Immigr. and Customs Enforcement*, 429 F. Supp. 3d 742, 755 (D. Colo. 2019) (quoting *Laidlaw*, 528 U.S. at 185).  Standing to seek redress for already-inflicted harm differs from standing to seek prospective relief against anticipated future harm. *See id.* Past exposure to illegal conduct does not in itself show a present case or controversy to establish standing for injunctive relief if unaccompanied by any continuing, present adverse effects. *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974)). Moreover, "standing—for prospective relief or otherwise—is judged by the state of facts as they <u>existed when the plaintiff files the complaint</u>." *Id.* (citing *Laidlaw*, 528 U.S. at 184–88) (emphasis added).

Simply put, standing and mootness issues are triggered separately and resolutions of the same require application of different principles and burdens. *Id.* (citing *Davis v. FEC*, 554 U.S. 724, 733–36 (2008)) ("If standing for prospective relief exists when the complaint is filed," the effect of "later events that appear to moot such relief . . . is analyzed under separate principles and burdens that apply specifically to mootness"). Given the undisputed fact Plaintiff's red tag sanction was lifted 21 days after its imposition and more than one year before the filing of this action, *compare* [#1, filed December 19, 2019] *with* [#41 at 4 ¶ 1, 10 ¶ 13, 14 ¶¶ 24–27 (alleging an incident occurring sometime before 2018 that led to Plaintiff's red tag sanction, which was lifted 21 days later when he agreed to speak with intelligence staff)], this court agrees that it lacks subject matter

jurisdiction over Claims I and IV—albeit under application of the standing, rather than mootness, doctrine. "The plaintiff bears the burden to establish standing at the time the suit is filed, and if the defendant's offending conduct has ceased by that time," a court should dismiss for lack of <u>standing</u> and, more specifically, lack of redressability. *WildEarth Guardians*, 690 F.3d at 1185 (emphasis added).

Thus, this court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** as to Claims I and IV for injunctive relief regarding the red tag policy, and that the same be **DISMISSED without prejudice** for lack of subject matter jurisdiction on the theory that Plaintiff lacks standing.[5]

## C.    Individual Capacity Claims

Because this court proceeds by Recommendation, I now turn to considering whether Mr. Rivera has stated cognizable claims, including Claims I and IV.[6]

### 1.    Claim I: Fifth Amendment – Self Incrimination

The Fifth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1 (1964), states that no person "shall be compelled in any criminal case to be a witness against himself." U.S.

---

[5] In addition, any injunctive relief sought by Mr. Rivera for Claims I and IV against Defendants in their individual capacities [#41 at 6] is also not cognizable. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (observing that "[§] 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief").

[6] Ordinarily, a court cannot proceed to the merits of a claim if it concludes that the court lacks subject matter jurisdiction over the same. *See Colorado Outfitters Ass'n v. Hickenlooper ("Colorado Outfitters II")*, 823 F.3d 537, 543 (10th Cir. 2016) ("[A] federal court can't 'assume' a plaintiff has demonstrated Article III standing in order to proceed to the merits of the underlying claim, regardless of the claim's significance." (citations omitted)). But because this court proceeds by Recommendation, and for the sake of completeness, I consider Claims I and IV under Rule 12(b)(6) notwithstanding my conclusion that Plaintiff lacks standing to assert such claims.

Const. amend. V.  This privilege applies not only to persons who refuse to testify against themselves at their own criminal trial, "but also 'privileges them not to answer official questions put to them in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate them in future criminal proceedings." *U.S. v. Von Behren*, 822 F.3d 1139, 1144 (10th Cir. 2016) (internal alterations and citations omitted).

"To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt Cty.*, 542 U.S. 177, 189, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004) (citation omitted).  To state a Fifth Amendment claim, Mr. Rivera must plausibly allege "(1) that the statements desired by the CDOC carried the risk of incriminating him, and (2) that the penalty he suffered amounted to compulsion." *Doe v. Heil*, 533 F. App'x 831, 837 n.4 (10th Cir. 2013) (internal quotations and citation omitted).

***Incrimination.***  The protection from self-incrimination "includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Maness v. Meyers*, 419 U.S. 449, 461, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975) (citing *Hoffman v. United States*, 341 U.S. 479, 486 (1951)).  The privilege is properly invoked only "when the danger of self-incrimination is 'real and appreciable,' as opposed to 'imaginary and unsubstantial,' and 'this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer.'" *Von Behren*, 822 F.3d at 1144 (internal citations omitted).  But "[n]ot much is required . . . to show an individual faces some authentic danger of self-incrimination, as

the privilege 'extends to admissions that may only *tend* to incriminate.'" *Id.* (citation omitted).

Here, Defendants assert three ways in which Plaintiff fails to allege that he was at risk of incriminating himself. [#50 at 6–7]. First, Defendants argue that—other than an allegation that Plaintiff learned "in the aftermath" of the incident that "dangerous contraband was found along with a note" [#41 at 10 ¶ 13]—Plaintiff provides no information about the incident, his involvement in the incident, or even any allegations to suggest illegal circumstances surrounding the same. [#50 at 6].  Second, Defendants argue that Plaintiff's conclusory allegations that he would be at risk of incriminating himself if he spoke with intelligence staff regarding the incident are "directly contradicted" by factual allegations in the Second Amended Complaint. [*Id.* at 6–7].  Third, Defendants contend that Mr. Rivera fails to allege that he ultimately made any incriminating statements, or was subsequently charged with a crime for such statements, following his interview with intelligence staff. [*Id.* at 7].  In Response, Plaintiff concedes that he lacks any knowledge of the "specifics of the initial lockdown," but argues that "[t]his still does not take away genuine possibilities of mistakenly giving statement which could lead to further proceedings." [#67 at 4 ¶ 6].

Even read in the light most favorable to Mr. Rivera, his allegations fail to establish that he faced any "real and appreciable" risk of self-incrimination.  *Von Behren*, 822 F.3d at 1144.  Mr. Rivera alleges that he found out "in the aftermath" that "dangerous contraband was found along with a note," [#41 at 10 ¶ 13], but provides no facts that suggest his involvement in the incident.  And there are no allegations to support the inference that the incident, which occurred in a unit other than Mr. Rivera's [*id.*], even

involved illegal (or incriminating) circumstances.  His speculative statements that he <u>could</u> risk incriminating himself "<u>if</u> whatever was found had a link" to him, "or was being sent" to or identified him in any way, [*id.* (emphasis added)] are not presumed true for purposes of this Motion.  *See Iqbal*, 556 U.S. at 678 (not all factual allegations are "entitled to the presumption of truth," and conclusory or speculative statements are not sufficient).  Such "imaginary and unsubstantial" risks of incrimination are not protected by the Fifth Amendment. *See Von Behren*, 822 F.3d at 1144.  *See also Neilsen v. McElderry*, 823 F. App'x 575, 582 (10th Cir. 2020) ("[W]ith no information as to what (if any) questions would be asked, there was no 'real and appreciable' danger of self-incrimination for Mr. Neilsen." (quoting *Von Behren*, 822 F.3d at 1144 (internal quotation marks omitted)).

Moreover, Mr. Rivera alleges that he was willing to talk to intelligence staff provided that inmates were permitted to go "in groups of two." [#41 at 8 ¶ 8, 14 ¶ 26].  Rather than supporting his assertion that he faced a "real and appreciable" danger of self-incrimination, his allegations suggest only that Mr. Rivera was concerned with the danger of appearing as an informant.  Accordingly, I find that Mr. Rivera fails to plead the requisite risk of self-incrimination to state his claim.  This failure is fatal to his Fifth Amendment claim.  For the sake of completeness, I also consider whether Mr. Rivera has adequately pled the second element of his claim.

***Compulsion.*** The Fifth Amendment "does not prohibit all penalties levied in response to a person's refusal to incriminate himself." *McKune v. Lile*, 536 U.S. 24, 49, 122 S. Ct. 2017, 153 L. Ed. 2d 47 (2002) (O'Connor, J., concurring). Only "some penalties are so great as to compel incrimination testimony, while others do not rise to that level."

*Von Behren*, 822 F.3d at 1147 (quoting *McKune*, 536 U.S. at 49) (internal alterations and quotation marks omitted).

In *McKune*, the Supreme Court considered whether a state prisoner was unconstitutionally compelled to incriminate himself when the state threatened to reduce his prison privileges and housing accommodations if the prisoner refused to admit past sexual offenses. 536 U.S. at 31.  The threatened penalties at stake in that case included the prisoner's transfer to a maximum security cell and reduced "visitation rights, earnings, work opportunities, ability to send money to family, canteen expenditures, access to a personal television, and other privileges . . . automatically curtailed." *Id.*  Writing for a plurality, Justice O'Connor found that the foregoing penalties failed to rise to the level of compulsion that violates the Fifth Amendment. *Id.* at 48–54 (O'Connor, J., concurring).

The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") recognizes Justice O'Connor's concurrence as the holding in *McKune*. *See Wirsching v. Colo.*, 360 F.3d 1191, 1201 (10th Cir. 2004).  In *Wirsching*, the Tenth Circuit applied *McKune* to hold that the CDOC's denial of a prisoner's opportunity to earn good time credits for refusing to admit a sexual offense failed to rise to the level of "compulsion" so as to violate the Fifth Amendment. *Id.* at 1203. *See also Searcy v. Simmons*, 299 F.3d 1220, 1226–27 (10th Cir. 2002) (withholding good-time credits to Kansas prisoner who refused to participate in sex offender treatment program because it required admitting he committed a sex offense did not constitute compulsion).

Defendants rely on *McKune* and its progeny to argue that the penalties Mr. Rivera allegedly suffered as a result of his red tag sanction do not rise to the level of compulsion. [#50 at 7–8 (citing *McKune*, 536 U.S. at 49 (O'Connor, J., concurring)). In his Response,

Mr. Rivera contends that *McKune* "differs greatly in all aspects" from the facts of this case because *McKune* involved a sexually-violent predator. [#67 at 10].   However, the applicability of the general holding in *McKune* and its progeny to Plaintiff's claim turns not on the crimes committed by or admissions sought from the offenders, but instead on the restriction of privileges threatened or applied to them.

Here, Mr. Rivera claims that his initial placement on red tag sanction was extended "indefinitely" after he refused to speak to intelligence staff about the incident. [#41 at 4 ¶¶ 3–5].   On red tag, his recreation, education, and program privileges were withheld, and he was limited to shower privileges once every three days. [*Id.* at 4 ¶¶ 3–5].   Mr. Rivera further explains that the withheld education and program privileges allow prisoners to "rehabilitate or demonstrate compliance with [the] parole board" and provide opportunities to earn good time credits. [*Id.* at 4 ¶ 5; *id.* at 8 ¶ 5].   At best, the shower restrictions and withheld recreation, education, and program privileges may have made "his prison experience more unpleasant," but such "minor" consequences are not "serious enough to compel him to be a witness against himself." *See McKune*, 536 U.S. at 50–51 (O'Connor, J., concurring).   And insofar as Mr. Rivera claims that his restrictions effectively denied him an opportunity to earn good time credits, such denial similarly fails to rise to the level of "compulsion" required for his Fifth Amendment claim. *See Wirsching*, 360 F.3d at 1201.   In sum, this court finds that Plaintiff fails to adequately plead either of the two required elements of a Fifth Amendment self-incrimination claim.

Thus, should the presiding judge find that subject matter exists, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss as to Claim I be **GRANTED**, and

Plaintiff's Fifth Amendment claim be **DISMISSED without prejudice** for failure to state a claim.

### 2.    Claim II: First Amendment – Retaliation

To plead a cognizable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in constitutionally protected activity; (2) he suffered an injury that would chill an ordinary person from engaging in that protected activity; and (3) his protected activity substantially motivated the defendant's retaliation. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Defendants argue that Plaintiff's First Amendment claim fails to adequately plead elements one and three.  First, Defendants contend that Plaintiff "cannot show that he was engaged in constitutionally protected activity" because he "fails to state a plausible Fifth Amendment claim." [#50 at 12].  Second, they argue that Plaintiff fails to allege a plausible retaliatory motive because he fails to show any temporal link between his refusal to talk about the incident and his placement on red tag sanction. [#50 at 12–13].

***Constitutionally Protected Activity.*** For the reasons set forth in Section III.C.1 above, this court finds that Mr. Rivera has failed to state a claim under the Fifth Amendment.  Because Mr. Rivera's First Amendment retaliation claim is premised on the invocation of his Fifth Amendment rights not to speak with intelligence staff,[7] and because

---

[7] Although Mr. Rivera asserts for the first time in his Response that his constitutionally protected activity included "the equal protection clause guarantee to due process," [#67 at 11 ¶ 15], this basis for his First Amendment retaliation claim does not appear in his Second Amended Complaint.  *Compare* [*id.* ("In my circumstance the protected activity was the 5th [Amendment] privilege against incrimination & the equal protection clause guarantee to due process")] *with* [#41 at 11 ¶ 17 ("The safest thing to do was invoke my 5th [Amendment] privilege. Then upon doing so I was given an indefinite length attachment as punishment for not placing myself at risk.")].  Even if this court was to consider Plaintiff's new argument, it would not alter the court's analysis or conclusion.

this court concludes that Mr. Rivera has failed to plead that his Fifth Amendment rights were properly invoked, this court finds that Mr. Rivera has failed to allege the requisite "constitutionally protected activity" to support a First Amendment claim.  Thus, Mr. Rivera fails to state a claim for retaliation in violation of his First Amendment rights. *But see Neilsen v. McElderry*, 823 F. App'x 575, 582 (10th Cir. 2020) (disagreeing in dicta with district court's reasoning that because plaintiff had not stated a Fifth Amendment violation, he was not engaged in constitutionally protected activity when he refused to sign an agreement because he told the defendant that he "refused to sign for Fifth Amendment reasons, which means he was engaged in constitutionally protected activity").[8]

The Fifth Amendment does not protect all inmate refusals to speak to prison officials.  *Hiibel*, 542 U.S. at 189 ("To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled.").  As set forth above, this court finds that Mr. Rivera's circumstances, as alleged, did not qualify for the Fifth Amendment privilege because he faced neither self-incrimination risks nor compulsion.  It follows then that, by invoking a privilege for which he did not qualify, Mr. Rivera's invocation was not protected by the Constitution. *Cf. Worrell v. Henry*, 219 F.3d 1197, 1213 (10th Cir. 2000) (concluding that the plaintiff engaged in constitutionally protected activity by testifying as an expert witness for the defendant in a murder trial in light of precedent establishing that truthful testimony is protected by the First Amendment).

---

[8] Like the inmate in *Neilsen*, Mr. Rivera alleges that he "refused to [speak with intelligence staff] for Fifth Amendment reasons . . . ." *Neilsen v. McElderry*, 823 F. App'x 575, 582 (10th Cir. 2020).  *See* [#41 at 4 ¶ 3 (alleging that Plaintiff declined to speak with intelligence staff by stating that he was "exercising [his] privilege against incrimination")], and was then told by Defendant Scott that "an indefinite time attachment was now placed on [his] red tag status," [*id.* at 4 ¶ 4].

Accordingly, this court finds that Mr. Rivera has failed to adequately plead the first element of his retaliation claim.[9]

Thus, this court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** as to Claim II, and Plaintiff's First Amendment retaliation claim be **DISMISSED without prejudice** for failure to state a claim.

### 3.  Claim III: Eighth Amendment – Conditions of Confinement

The Eighth Amendment's proscription on cruel and unusual punishment extends to the conditions under which an inmate is confined. *See Contreras v. Dona Ana Cty. Bd. of Cty. Comm'rs*, 965 F.3d 1114, 1116 (10th Cir. 2020) (Tymkovich, J., concurring).  As such, the Eighth Amendment requires prison officials to "provide humane conditions of confinement." *Requena*, 893 F.3d at 1214. "Conditions-of-confinement claims have two prongs: (1) an objective prong, under which the alleged injury must be sufficiently serious, and (2) a subjective prong, under which the prison official who imposed the condition must have done so with deliberate indifference." *Redmond v. Crowther*, 882 F.3d 927, 936 n.3 (10th Cir. 2018).

---

[9] While this court need not reach the issue of whether Mr. Rivera's indefinite placement on red tag sanction was "substantially motivated" by his refusal to speak with intelligence staff, this court briefly addresses it here.  To satisfy the third element of a First Amendment retaliation claim, Mr. Rivera must allege "that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Mr. Rivera's retaliation claim turns on the indefinite extension to his red tag sanction that was applied after he refused to speak to intelligence staff about the incident—not his initial placement on red tag. *See* [#41 at 11 ¶ 15 ("Upon denying to comply with an interview, . . . immediately after, I was given an indefinite time length attachment to my red tag.") (emphasis added)].  Defendants' argument that Mr. Rivera was initially placed on red tag at an indeterminate time relative to the "incident" is therefore inapposite, and this court does not find this second element to be a basis for dismissal.  Indeed, during subsequent "walk thrus," Defendants Wingert and Scott allegedly told inmates (including Mr. Rivera) that they would be removed from red tag if they agreed to speak to intelligence staff. [*Id.* at 14 ¶ 25].

To satisfy the objective prong, Mr. Rivera must plead facts showing that the conditions were objectively "sufficiently serious." *Id.* To satisfy the subjective component, Mr. Rivera must allege facts showing that Defendants knew of yet disregarded an excessive risk to Mr. Rivera's health or safety. *See Walker v. Mohiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (internal quotation marks omitted)).

Defendants argue that Mr. Rivera's alleged conditions, including his red tag restrictions, risk of looking like an informant to other inmates, and self-imposed hunger strike, fail to show an objectively serious deprivation to support an Eighth Amendment claim. [#50 at 15]. Defendants argue in the alternative that, even if any of the foregoing conditions were objectively serious deprivations, Mr. Rivera fails to allege facts to show that Defendants were subjectively aware of a risk such deprivations posed to Mr. Rivera.

Mr. Rivera counters by arguing that the red tag policy "purposely ignores life threatening risks through incrimination and violence in a dangerous environment," [#67 at 13 ¶ 17], and citing a string of cases from other circuits, [*id.* (citing, e.g., *David v. Hill*, 401 F. Supp. 2d 749 (S.D. Tex. 2005); *Thomas v. D.C.*, 887 F. Supp. 1, 4–5 (D.D.C. 1995); *Trammel v. Keane*, 338 F.3d 155, 163 (2d Cir. 2003); *Jordan v. Gardner*, 986 F.2d 1521, 1528 (9th Cir. 1993); *Holt v. Sarver*, 309 F. Supp. 362, 381 (E.D. Ark. 1970))]. But the cases on which Mr. Rivera rely do not present facts similar to this action.

In *David v. Hill*, for example, the court discussed cases from a handful of circuits where prison officials either labeled an inmate a "snitch" or spread rumors to other inmates to that effect. *See* 401 F. Supp. 2d at 756–57 (collecting cases). Here, Mr. Rivera

does not allege that any of the Defendants labeled him a snitch (or informant), spread rumors to that effect, or even that other inmates believed Mr. Rivera was an informant. *Cf. Thomas*, 887 F. Supp. at 4 (finding inmate's allegations that he was physically confronted and threatened by inmates who had been told by a prison official that he was a "snitch" sufficiently harmful to state an Eighth Amendment excessive force claim).[10]  In Reply, Defendants reiterate their position that Mr. Rivera fails to satisfy either prong of the deliberate indifference test. This court respectfully agrees with Defendants.

*Red Tag Sanction.* The restrictions imposed during Plaintiff's 21-day red tag sanction (i.e., showers once every three days and withheld recreation, education, and program privileges) are no more serious than alleged conditions previously dismissed by courts as insufficiently objectively serious. *See, e.g.*, *Walker v. Scherbath*, No. 15-cv-00823-MJW, 2015 5697366, at *2, *5 (D. Colo. Sept. 29, 2015) (holding inmate did not state Eighth Amendment claim where privileges were restricted over eight months, inmate was confined to his cell for up to 22 hours per day and up to 85 hours on long weekends without showers, inmate was not allowed sufficient clothing or blankets to stay warm, and inmate was not allowed access to adequate hygiene supplies), *aff'd*, 676 F. App'x 815 (10th Cir. 2017); *Smith v. Romer*, 107 F.3d 21 (Table), 1997 WL 57093, at *2

---

[10] Other cases relied on by Mr. Rivera have little bearing on this action. *See, e.g.*, *Trammel v. Keane*, 338 F.3d 155, 163 (2d Cir. 2003) (deliberate indifference claims that implicate prison security must consider allegations in light of competing institutional concerns, and courts must ask whether the alleged misconduct "was reasonably calculated to restore prison discipline and security," according "wide-ranging deference" to prison official's measures to maintain institutional security); *Jordan v. Gardner*, 986 F.2d 1521, 1528 (9th Cir. 1993) (distinguishing prison officials' acts/policies of force to maintain order from acts/policies developed over time and unrelated to security concerns); *Holt v. Sarver*, 309 F. Supp. 362, 381 (E.D. Ark. 1970) (finding state prison conditions that included a "trusty" inmate system; the absence of educational, vocational, and rehabilitative services; lack of medical and dental care; and unsanitary kitchens unconstitutional).

(10th Cir. 1997) (unpublished) (holding that inmate's complaints concerning, *inter alia*, lack of access to education, recreation, and vocational programs "do not relate to life's necessities" and fail to satisfy the objective prong of the test).

Moreover, even if Mr. Rivera's red tag restrictions could be considered objectively serious, he fails to plausibly allege that any of the Defendants were subjectively aware of and consciously disregarded such a risk.  I address this issue in greater detail below.

***Looking Like an Informant.*** While the Tenth Circuit has held that the Eighth Amendment reaches "conduct that is sure or very likely to cause serious injury at the hands of other inmates," *Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001), "being subjected to threats of abuse or the vague possibility of assault from other inmates is not sufficiently serious to give rise to an Eighth Amendment violation," *Quintana v. Doe*, No. 09-cv-00946-CMA-KLM, 2010 WL 2650052, at *4 (D. Colo. June 30, 2012).

Here, Mr. Rivera alleges that SCF officials are aware of "the risk informants face in a dangerous environment" like SCF. [#41 at 12 ¶ 18].  But, as Defendants point out, Mr. Rivera fails to allege any facts to show that he was at substantial risk of harm.  For example, Mr. Rivera fails to allege that other inmates believed he was an informant, threatened him not to meet with intelligence staff, or accused him of being an informant after he agreed to be interviewed. *See generally* [*id.* at 12–15].  Thus, he fails to allege that he faced an objectively serious risk premised on his speculative fears of appearing like an informant to fellow inmates.

Even if Mr. Rivera sufficiently pled the objective component of his claim, he cannot satisfy the subjective component.  Mr. Rivera claims that "upon arrival at S.C.F., we are asked by administrators if we have ever informed on anyone" which he argues "clearly

shows S.C.F. authorities are aware risk informants face." [*Id.* at 12 ¶ 18].  But again, Mr. Rivera alleges nothing to suggest that any of the Defendants could plausibly infer that he was at substantial risk of being labeled an informant by other inmates.  And general allusions to "S.C.F. authorities" that he alleges "are aware" of the risk posed to inmate informants at the prison do not plausibly suggest that those authorities and the Defendants in this action are one and the same. [*Id.*].

Moreover, per Mr. Rivera, any concerns of looking like an informant by interviewing with intelligence staff were abated because he was permitted to bring another inmate with him.  [*Id.* at 14 ¶ 26].  Indeed, according to him, Mr. Rivera and his companion were allegedly protected from "both risks"—self-incrimination and harm from other inmates for looking like an informant—"by having witnesses present." [*Id.*].  Thus, he cannot show that any of the Defendants were deliberately indifferent to the risks to Mr. Rivera if he looked like an informant, because intelligence staff "allowed" him to interview "in groups of two – preserving [the inmates]" [*id.*] from the same risk he claims Defendants consciously disregarded.

***Hunger Strike.*** "'Prison administrators have a right and a duty to step in and force an inmate to take nourishment if a hunger strike has progressed to the point where continuation risks serious injury or death.'" *Anderson v. Colo. Dep't of Corr.*, No. 16-cv-02113-CMA-MJW, 2017 WL 6033681, at *8 (D. Colo. Aug. 27, 2017) (quoting *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011)). However, "if weight loss and temporary discomfort are the only consequences of refusing to eat, then the inmate's choice to go on a hunger strike raises no Eighth Amendment concern." *Id.*

Here, Mr. Rivera merely alleges that he engaged in a 21-day hunger strike in protest of the prison's red tag policy, resulting in the loss of twenty pounds. [#41 at 8 ¶ 6]. He offers no additional facts to show that that his hunger strike posed a risk of serious injury.  In other words, the only consequences Mr. Rivera plausibly alleges—hunger and weight loss—do not give rise to an objectively serious risk of harm. *See Anderson*, 2017 WL 6033681, at *8.  Moreover, he alleges no facts to suggest that Defendants knew of and/or consciously disregarded the (objectively insufficiently serious) risks to Mr. Rivera posed by his 21-day hunger strike.  He therefore fails to state an Eighth Amendment claim on this basis.

Accordingly, this court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** as to Claim III, and Plaintiff's Eighth Amendment conditions of confinement claim be **DISMISSED without prejudice** for failure to state a claim.

### 4. Claim IV: Fourteenth Amendment Due Process Clause

The Fourteenth Amendment Due Process Clause states, "No state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Typically, a procedural due process claim depends on two questions: "(1) Did the plaintiff possess a protected property or liberty interest to which due process protections apply? And if so, (2) was the plaintiff afforded an appropriate level of process?" *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1172 (10th Cir. 2016). "To establish a due-process violation, a prison inmate challenging the conditions of his confinement must show that the defendants deprived him of a constitutionally protected liberty interest." *Grissom v. Roberts*, 902 F.3d 1162, 1169 (10th Cir. 2018).

But "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Rather, a protected liberty interest arises only if the conditions of confinement constitute an "atypical and significant hardship in relation to the ordinary incidents of prison life." *Al-Turki v. Tomsic*, 926 F.3d 610, 616 (10th Cir. 2019) (ellipsis and internal quotation marks omitted).  Defendants argue that Mr. Rivera fails to plausibly allege an atypical and significant hardship suffered as a result of the red tag policy.  This court respectfully agrees.

***Protected Liberty Interest.*** Relevant factors to be considered in determining whether certain conditions of confinement impose atypical and significant hardship in relation to the ordinary incidents of prison life include (1) whether the conditions relate to and further a legitimate penological interest, (2) whether the conditions are extreme, (3) whether the conditions increase the duration of confinement, and (4) whether the conditions are indeterminate. *See DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007).  I consider each factor in turn.

First, the subject conditions were related to the legitimate penological interest in institutional security: Mr. Rivera was sanctioned for refusing to interview with intelligence staff about an incident within the facility involving dangerous contraband.  *See Doe v. Heil*, 781 F. Supp. 2d 1134, 1140 (D. Colo. 2011) ("Legitimate penological interests include . . . security.").  Second, in context, Mr. Rivera's 21-day restriction of various privileges is not extreme: similar, and indeed harsher, allegations have been held insufficient to plead an atypical and significant hardship for purposes of a due process claim. *See, e.g.*, *Sandin v. Conner*, 515 U.S. 472, 488, 115 S. Ct. 2293 (1995) (no

cognizable due process claim where inmate was subject to 30 days in punitive segregation);[11] *Meek v. Jordan*, 534 F. App'x 762, 765 (10th Cir. 2013) (inmate failed to state due process claim in the absence of "any facts that would plausibly indicate that 60 days in disciplinary segregation is atypical in relation to the ordinary incidents of prison life"); *Scott v. Crowley Cty. Corr. Facility*, 76 F. App'x 878, 881 (10th Cir. 2003) (affirming dismissal of complaint as frivolous where inmate's allegations of 65 days in segregation failed to constitute "atypical and significant hardship in relation to the ordinary incidents of prison life").

Third, while Mr. Rivera alleges that the education and program privileges withheld from him during red tag allow prisoners to "rehabilitate or demonstrate compliance with [the] parole board" and provide opportunities to earn good time credits, [#41 at 4 ¶ 5, 8 ¶ 5], Mr. Rivera does not plausibly suggest that his lack of access to those program privileges increased the duration of his confinement. *See Handy v. Douglas*, No. 14-cv-01930-WYD-MEH, 2016 WL 1238152, at *3 (D. Colo. Mar. 30, 2016) ("While inmates must be afforded due process before their good time credits can be *revoked*, . . . Colorado law does not furnish a right to earn good-time  credits and expressly permits the denial of such a right." (internal quotations, citations, and alterations omitted)).

---

[11] In Response, Plaintiff cites a string of cases from other jurisdictions—all of which predate the Supreme Court's holding in *Sandin*. [#67 at 11–12 ¶ 16 (citing *Williams v. Franzon*, 499 F. Supp. 304, 305 (N.D. Ill. 1980); *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2693, L. Ed. 2d 935 (1974); *Kent v. U.S.*, 383 U.S. 541, 562 (1966); *Conner v. Sakai*, 15 F.3d 1463 (9th Cir. 1993); *Green v. Ferrell*, 801 F.2d 765, 768-69 (5th Cir. 1986))]. Indeed, Plaintiff cites repeatedly to the very Ninth Circuit opinion *reversed* by the Supreme Court in *Sandin. Compare* [*id.* at 12 ¶ 16 (citing *Connor v. Sakai*, 15 F.3d 1463)] *with Sandin*, 515 U.S. at 488 (reversing judgment).

Finally, Defendants argue that Mr. Rivera has failed to plausibly allege that his placement was "indefinite" because it was clear to Mr. Rivera that his release was contingent upon his willingness to interview with intelligence staff. [#50 at 18].  Mr. Rivera alleges that his red tag sanction was extended "indefinitely" when he refused to speak to intelligence staff about the incident. [#41 at 4 ¶¶ 3–5, 14 ¶ 24].  Yet he also alleges that Defendants Scott and Wingert made clear that the continuation of his placement on red tag was contingent upon whether he participated in an interview with intelligence staff— and that his red tag sanction was subsequently lifted 21 days later upon satisfying the conditions necessary for his sanction to be lifted. [*Id.* at 14 ¶¶ 24–27].   Assuming *arguendo* that Mr. Rivera was faced with the choice of either incriminating himself and/or appearing as in informant to fellow inmates, or continuing his red tag sanction, Plaintiff's decision to avoid a perceived danger should not be held against him. *See Mackey v. Watson*, No. 17-cv-01341-CMA-STV, 2017 WL 6016351, at *10 (D. Colo. Dec. 5, 2017).

Nevertheless, even construing Plaintiff's factual allegations in the light most favorable to him, this court concludes that Plaintiff fails to allege sufficient facts to allow a factfinder to conclude that his 21-day red tag sanction amounts to an "atypical and significant hardship" as necessary to state a due process claim under the Fourteenth Amendment.  *See Deberry v. Davis*, No. 10-cv-00725-CMA-BNB, 2011 WL 1258509, at *3 (D. Colo. Mar. 31, 2011) (adopting and affirming recommendation to grant motion to dismiss prisoner's due process claim and finding plaintiff did not have a constitutionally protected liberty interest where he failed to establish three of the four *DiMarco* factors). Accordingly, should the presiding judge find subject matter jurisdiction exists, this court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** as to

Claim IV, and Plaintiff's Fourteenth Amendment due process claim be **DISMISSED without prejudice** for failure to state a claim.

**D.      Qualified Immunity**

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation and citation omitted). To defeat a defense of qualified immunity, a plaintiff must show: "(1) that the defendant's conduct violated a constitutional or statutory right, and (2) that the law governing the conduct was clearly established at the time of the alleged violation." *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004).  For purposes of a motion to dismiss based on qualified immunity, the plaintiff's allegations need not "include all the factual allegations necessary to sustain a conclusion that the defendant violated clearly established law." *Robbins*, 519 F.3d at 1249 (internal quotation and citation omitted).

"Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).  On a motion to dismiss asserting a qualified immunity defense, the court must determine whether the complaint's factual allegations state a plausible constitutional claim—not whether the complaint contains all the necessary factual allegations to sustain a conclusion that the defendant violated clearly established law. *See Partridge v. Pelle*, No. 17-cv-02941-CMA-STV, 2019 WL 1045840, at *7 n.6 (quoting *Estate of Dixon v. Bd. of Cty. Comm'rs*, No. 15-cv-02727-NYW, 2017 WL 1684134, at *3 (D. Colo. May 3, 2017)).

Having concluded that Plaintiff fails to state a cognizable constitutional claim on Claims II and III—the only causes of action asserted against Defendants in their individual

capacities seeking monetary relief—Defendants are entitled to qualified immunity as to those claims. *See Pearson*, 555 U.S. at 236 (holding that a court, within its sound discretion, can consider either prong of the qualified immunity analysis first, and qualified immunity may be appropriate on a failure of either prong). A contrary conclusion as to Plaintiff's constitutional claims notwithstanding, Defendants are entitled to qualified immunity from monetary damages unless Mr. Rivera can also show that the law was clearly established at the time of the constitutional violations. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

**Clearly Established Law.** "A plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (internal quotation and citation omitted). "In applying this test, courts must not define the relevant constitutional right 'at a high level of generality.'" *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017)). "Instead, as the Supreme Court 'explained decades ago, the clearly established law must be 'particularized' to the facts of the case.'" *Id.* (quoting *Pauly*, 137 S. Ct. at 552).

Plaintiff points to no authority, from the Supreme Court, the Tenth Circuit, or otherwise, to support a conclusion that clearly established law would put a reasonable official in Defendants' positions on notice that their conduct in this case—which amounted to (a) seeking to interview an inmate for information about an incident within the facility involving "dangerous contraband" (and ultimately permitting that inmate to participate on his terms); (b) placing an inmate on indefinite restrictions as a sanction for that inmate's

refusal to speak to intelligence staff about an incident; (c) subjecting an inmate to a red tag policy for 21 days, wherein recreation, education, and other program privileges were withheld, showers were restricted to one every three days, the inmate feared looking like an informant, and the inmate lost twenty pounds protesting the sanction policy; and (d) placing an inmate on restrictive sanction for refusing to speak with intelligence staff without any hearing or process—violated either the First or Eighth Amendment of the Constitution as reflected in Claims II and III.[12]   *See Perry*, 892 F.3d at 1127.  The absence of authority here "is fatal to Plaintiff['s] claim[s] for monetary damages." *Reinhardt v. Kopcow*, 66 F. Supp. 3d 1348, 1250 (D. Colo. 2014) (citing *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009) (qualified immunity places the burden on the plaintiff to show that the constitutional right was clearly established at the time of the alleged violation)).

Thus, qualified immunity is an additional basis for dismissal of Claims II and III.[13]

---

[12] The court notes that Mr. Rivera cites a plethora of legal authority in his Response. *See generally* [#67].   However, many of the cases on which Mr. Rivera relies predate applicable precedent,  lack binding precedential effect, and/or do not ultimately support the propositions for which he cites to them. *See, e.g.*, *supra* note 10.  For example, Mr. Rivera relies on his citation to *McElroy v. Lopac*, 403 F.3d 855 (7th Cir. 2005) to argue that he has "cite[d] on point case law that is clearly established." [#67 at 10–11 ¶ 15].  In *McElroy*, however, the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit") did not hold that prison officials retaliated against an inmate for exercise of his Fifth Amendment right to be free from self-incrimination in violation of the First Amendment.  Instead, the Seventh Circuit affirmed the district court's dismissal of the inmate's complaint for failure to state a claim, holding that although (1) the inmate had adequately stated a claim for retaliation under then-applicable federal pleading standards, (2) his inquiry was not the type of protected activity under the First Amendment that could support a retaliation claim. *See generally id.*  In any event, Mr. Rivera does not cite to any authority at all—as far as this court can discern—to support a conclusion that Defendants' conduct violated clearly established law.

[13] Given the foregoing analysis, this court does not address Defendants' arguments regarding personal participation as an additional basis for dismissal except to observe that, upon a liberal review of the Second Amended Complaint, this court declines to recommend dismissal of all claims against all Defendants on such theory.

### E.    Motion for Order Requesting Status Update

In Mr. Rivera's Motion for Order Requesting Status Update [#73], he requests a status update from the court concerning disposition of the instant Motion to Dismiss because he "does not know the exact time frames that courts are given upon considering outcomes or decisions." [*Id.* at 1].   Mr. Rivera's Motion for Order Requesting Status Update is **GRANTED** as follows: even with the issuance of this Recommendation, this court cannot predict the exact time frames for a final adjudication of the instant Motion to Dismiss.   As set forth below, the Parties will have an opportunity to object pursuant to Rule 72 of the Federal Rules of Civil Procedure and whether the Parties object, and the contents of any such objections, may affect the time required for a final determination. This court is confident that the presiding judge will address this Recommendation and any objections raised by the Parties in as expeditious a manner as her docket allows.

### CONCLUSION

For the reasons set forth herein, this court respectfully **RECOMMENDS** that:

(1)    Defendants' Motion to Dismiss [#50] be **GRANTED**; and

(2)    Plaintiff's Second Amended Complaint [#41] be **DISMISSED without prejudice**.[14]

---

[14] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions,

**IT IS FURTHER ORDERED** that:

(1)     Plaintiff's Motion for Order Requesting Status Update [#73] is **GRANTED as set forth above**; and

(2)     A copy of this Order and Recommendation, marked as legal mail, be sent to the following:

> Joey Rivera #111286
> Sterling Correctional Facility (SCF)
> P.O. Box 6000
> Sterling, CO 80751

DATED: January 31, 2021                    BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

---

and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).